UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
BATESVILLE DIVISION

**GUY GARNER and**
**RUBY GARNER**                                                                                             **PLAINTIFFS**

v.                                    CASE NO. 1:10cv00041 BSM

**XTO ENERGY, INC.**                                                                                        **DEFENDANT**

## ORDER

Plaintiffs, Guy Garner and Ruby Garner (collectively referred to as "the Garners"), move to remand [Doc. No. 5], and defendant, XTO Energy, Inc. ("XTO"), objects [Doc. No. 9]. The motion is granted.

This is a declaratory judgment action in which the Garners request a declaration that the mineral lease they entered into with XTO expired on March 23, 2010. They also request damages in an amount to be determined at trial, claiming that XTO slandered their mineral title. The complaint specifically states that the amount in controversy is less than that required for federal jurisdiction. XTO filed a notice of removal from Cleburne County Circuit Court on June 3, 2010, asserting federal diversity jurisdiction and the Garners moved to remand the following day, arguing that the amount in controversy does not exceed $75,000. They maintain that no monetary damages should be associated with the declaratory action and that the damages for slander of title would be limited to an amount less than $75,000 because the complaint does not provide a specific damages amount.

In response, XTO cites *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017 (8th Cir. 2010), for the proposition that courts place a monetary value on the right in issue when

determining the amount in controversy in a suit for declaratory judgment. In *Usery*, the Eighth Circuit held that when a complaint fails to demand a specific amount in damages, the court must determine whether the amount in controversy exceeds $75,000. *Id.* at 1018. The amount in controversy in a declaratory judgment action "is the value to the plaintiff of the right that is in issue." *Id*. "The question is the actual value of the object of the suit. In a quiet title action, therefore, in deciding the jurisdictional question, a district court must determine what the property interest at issue is worth in the marketplace, which is a matter of objective fact." *Id*. at 1019. According to XTO, the rights at issue here are the mineral rights subject to the lease. It has submitted the affidavit of Chris Broadway ("Broadway"), the Regional Land Manager for XTO, who states that the value of the mineral rights is greater than $75,000.

In their reply, the Garners assert that although courts have placed monetary values on claims for declaratory judgment, the value at issue here is the value of the lease itself and not the value of the mineral rights. The Garners argue that, unlike the plaintiffs in *Usery*, they have not brought a suit for quiet title. Therefore, a determination of the value of the mineral rights is not the appropriate inquiry. They maintain that the only applicable valuation is that of the lease itself, and the value of the lease does not exceed $75,000. The Garners fail to explain, however, how they arrive at a figure less than $75,000.

XTO is correct that in suits for declaratory judgment, a value is assigned to the right at issue. Specifically, the court must determine the value of the right *to the plaintiff*. As stated above, the Garners request a declaratory judgment that the lease at issue terminated

on March 23, 2010. If the lease terminated on that date, the effect of the termination would be that the Garners would have complete control over the mineral rights. Therefore, to determine the amount in controversy, the value of the mineral rights must be calculated.

In the affidavit submitted by XTO, Broadway values the mineral rights at more than $75,000. This affidavit, however, is woefully inadequate. In *Usery*, the Eighth Circuit determined that the affidavits submitted by the defendant did not adequately support a finding by the preponderance of the evidence that the amount in controversy exceeded $75,000. *Id.* at 1019-20. An examination of the affidavits provided insufficient information to determine whether the mineral interests were worth more than $75,000.

> . . . [T]he affidavit contains no estimate of how long the mineral interest at issue might reasonably be expected to produce, whether its production would be relatively constant over its productive life, or what a reasonable discount rate might be in the circumstances, so that we could make some estimate of its present value.

*Id*. at 1019. Following these observations, the *Usery* court pointed out other deficiencies, including the omission of the costs of drilling and extraction, and then remanded the case to the district court with directions to remand it to the state court. *Id*. at 1020.

The affidavit submitted by XTO provides almost no explanation of how a value greater than $75,000 was reached. Broadway states only that in order for the mineral rights to be worth more than $75,000, each net mineral acre must be worth more than $481.00. He determines, based on his experience, that each net mineral acre is worth more than $481.00. Like the affidavits in *Usery*, Broadway's affidavit fails to take into account, or explain the accounting for, many factors impacting the value of the mineral rights. The affidavit is

insufficient and XTO has failed to meet its burden by a preponderance of the evidence.

Accordingly, the motion to remand [Doc. No. 5] is granted.  This case is remanded to Cleburne County Circuit Court.

IT IS SO ORDERED this 6th day of August, 2010.

_____
UNITED STATES DISTRICT JUDGE